UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KAREN MCGRATH, ET AL | CIVIL ACTION |
| VERSUS | NO: 06-11413<br>Ref. 08-1475<br>08-4044 |
| CHESAPEAKE BAY DIVING, ET AL | SECTION: "J" (1) |

**ORDER AND REASONS**

Before the Court are the Motion for Partial Summary Judgment by Brian Bradford (Rec. D. 337) and the Motion for Partial Summary Judgment by 2-W Diving, Inc. (hereafter "2-W")(Rec. D.345). These motions are opposed. Upon review of the record, the memoranda of counsel, oral argument, and the applicable law, this Court now finds, for the reasons set forth below, that the motions should be **GRANTED.**

**Background Facts**

This case stems from an accident during a salvage operation in the Gulf of Mexico on or about August 29, 2006. The goal of the salvage operation was to recover several platforms owned by the Rowan Companies, Inc. ("Rowan") that had been toppled during

1

Hurricanes Katrina and Rita.  During the operation, diver McGrath sustained fatal injuries.  Divers Brian Bradford and Jason Pope were injured while attempting to rescue McGrath.  McGrath's parents filed suit in this Court on December 29, 2006.  Pope filed suit in this Court on January 16, 2007.  Bradford filed suit in this Court on April 1, 2008 and in the District of South Carolina on September 22, 2006.  The South Carolina case was transferred to this district and the Pope and Bradford cases were consolidated with the McGrath case.  The McGrath and Pope cases subsequently settled.

In undertaking the salvage operation, Rowan contracted with several other entities.  The main salvage contractor was Bisso Marine, LLC ("Bisso") which entered into a contract with Rowan.  Bisso provided some of its own divers for the operation and contracted with Chesapeake Bay Diving, Inc. ("Chesapeake") and 2-W Diving, Inc. ("2-W") to provide additional divers.  Pope and Bradford were employed by 2-W.

On April 15th, 2009, 2-W's insurer, State National, terminated its defense of 2-W alleging that the limits of its policy had been reached. It relied on the argument that all the accidents amounted to one occurrence. State National's policy provides only $1 million per occurrence in coverage including the cost of defense. In other words, this "eroding policy" limit is reduced by expenditures for attorneys' fees and costs.

2

The Plaintiff and 2-W argue that there were in fact multiple occurrences which led to the various injuries suffered by Brian Bradford and Jason Pope.[1] Both men were diagnosed with type II decompression sickness. Bradford alleges that his decompression sickness resulted from the boat ordering him to ascend too quickly while attempting to rescue McGrath. Then, alleges Bradford, he was not decompressed properly. Jason Pope attributes his decompression sickness to two other acts including his unnecessary decompression while he was "dirty" and his subsequent improper decompression.

Both men also suffered carbon monoxide poisoning. They attribute this to the alleged separate occurrence of the air intakes for the decompression chambers being placed too close to the exhaust source for the vessel.

Plaintiff further alleges that the two divers were not provided with prompt emergency hyperbaric treatment once their neurological symptoms presented. Furthermore, Bradford alleges that once placed in hyperbaric treatment, it was prematurely terminated.

Plaintiff contends that these various negligent acts amount to several occurrences under the definition of occurrence in 2-W's policy with State National.

---

[1] The parties acknowledge that the death of McGrath was not covered by 2-W's policy with State National.

3

**DISCUSSION**

**THE PARTIES' ARGUMENTS:**

The insurance policy at issue is a Maritime Employers Excess Indemnity (MEEI) contract which insures 2-W Diving for commercial diving operations in the Gulf of Mexico. All parties agree that this type of insurance contract is governed by Maritime law.

The Defendant, State National Insurance Company, avers that Federal law controls in Maritime disputes. However, in the "absence of clearly controlling federal precedent," the law of the "state with the most significant relationship to the substantive issue" applies. Wilbur Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 314 (1955). Courts often look at where the policy was issued to determine which state law applies. Albany Ins. Co v. Anh Thi Kieu, 927 F. 2d 882, 891 (5th Cir. 1991). Defendant indicates that the policy at issue in this matter was issued in South Carolina. In light of this, Defendant asserts that South Carolina law should be applied where federal law does not have controlling precedent.

Defendant argues that the policy in question is a $1 million dollar policy with an eroding limit for adjustments, investigation, and legal expenses. Maritime Form, A, p.2, para 4. This limit applies to each occurrence which is "an accident or series of accidents arising out of one event or occurrence."

Policy, MEEII Maritime Form A (MEL-001), p.2, para 4. There is no separate provision for legal fees in the contract. Therefore, the policy pays out a maximum of $1 million total for all accidents that are a result of one occurrence.

Defendant also argues that its policy is only an excess policy. The primary policy, according to Defendant, is the insured's own policy for itself for $25,000.00. According to Defendant, the excess policy mirrors the primary policy except where it specifically indicates a difference.[2]

Defendant argues that the question in this Motion revolves around whether or not the two claims by Bradford and Pope emanate from two or more separate occurrences. Once this is resolved, the Court will be able to determine whether State National must continue to Defend and/or indemnify 2-W. However, Defendant argues that this determination cannot be made until 2-W's role in the accident and its liability are adjudicated by a Court. Therefore, argues State National, Defendant cannot be required to defend or indemnify any further claims until the merits of the case are tried.

Alternatively, Defendant argues that the duty to defend is not implicated in this dispute for several reasons. First, it

---

[2]According to Defendant the primary policy is attached to the excess policy and outlined in the Employers Indemnity Insurance form (MEL-021) and modified in a Maritime Coverage Endorsement (MEL 022). Def. Memo in Opp P. 4(Rec.D.404)

5

argues that the policy does not include a defense obligation. State National concedes that the primary insurance coverage includes a provision outlining an affirmative right and duty to defend. However, Defendant contends that, while the excess policy tracks the primary policy significantly, there are some key distinctions. Specifically, State National's policy explicitly states that its obligation to investigate and defend differs from the primary policy. Therefore, while Defendant concedes that the excess policy requires it to pay back the cost of defense, it argues that since the policy does not include an affirmative duty to defend separate from the limit of the policy, this cost should be included in the eroded limit. Thus, this question should not be approached using the duty to defend framework of analysis.

Second, argues State National, the duty to defend analysis only applies when there is a dispute about whether or not the claims are covered by the policy. In the present case there is only a question about whether or not the policy has been *exhausted*. Defendant asserts that where it properly asserts that the limits of the policy have been met, it has no obligation to defend. Acands, Inc. v.Aetna Cas. & Sur. Co., 764 F.2d 968 (3 Cir. 1985); Zurich Ins. Co. v. Northbrook Excess and Surplus Ins. Co., 494 N.E.2d 634, 646 (Ill. App. 1986); Wilson v. Maryland Cas. Co., 105 A.2d 304(Pa. 1954).

6

Defendant argues that the policy has been exhausted and can only be found to be otherwise based on facts determined at trial. Defendant alleges that in eroding policies, when the limits of the policy are reached, the duty to defend expires. Gibson v.Northfield Ins. Co., 631 S.E.2d 598 (W. Va. 2005).[3]

Defendant further contends that in order to determine whether or not there was more than one occurrence, there needs to be factual determinations which cannot be drawn from the current record.[4]

Defendant further contends that claims by the other two Plaintiffs cannot constitute occurrences under the policy because 2-W's negligence is not implicated.  State National argues that the claims of McGrath, one of the other Plaintiffs, cannot be interpreted as a separate occurrence in the insurance contract because McGrath was not an employee of 2-W. Therefore, McGrath's claim is not covered by the policy.

State National also contends that the Pope claim cannot constitute another occurrence because the Pope settlement did

---

[3] The cases cited by Defendant in this section correctly point out that where the limits of an eroding policy are exhausted, the duty to defend expires. However, as discussed elsewhere in this opinion, this begs the question in this case as to whether or not the policy limits have in fact been exhausted.

[4] Defendant asserts that in a hearing held before the Court on August 5, 2009, the Court indicated that there was insufficient evidence to make a determination about the number of occurrences. However, this statement was made in reference to a determination for the purposes of granting summary judgment as to *coverage*.

not result from any negligence on behalf of 2-W Diving.[5] This assertion is based on the fact that no factual determinations were made as a result of the case not proceeding to trial.

Defendant argues a claim not covered or paid by the policy cannot constitute an occurrence. Defendant further argues that there is no competent evidence that 2-W was responsible for the occurrence which caused injury to Brian Bradford in the decompression chambers.

Finally, Defendant argues that the wording of the policy supports a finding of only one occurrence.

In support of his Motion for Partial Summary Judgment, Plaintiff Brian Bradford, raises several arguments. First, Plaintiff does not dispute that substantive South Carolina law applies.

With respect to the duty to defend, Plaintiff argues that the duty to defend is a more expansive obligation than the duty of coverage. City of Hartsville v. South Carolina Mut. Ins. & Risk Financing Fund, 382 S.C. 535, 677 (2009).

Furthermore, where there are questions regarding the appropriateness of coverage, the insurer is obligated to defend. Id. Town of Duncan v. State Budget and Control Bd., Div. of Ins. Services, 326 S.C. 6, 482 S.E.2d 768 (1997); Gordon-Gallup

---

[5] This argument is somewhat circular since State National defended, and presumably exhausted some of its coverage on the claims made by Pope.

8

Realtors, Inc. v. Cincinnati Ins. Co., 274 S.C. 468, 265 S.E.2d 38 (1990); 46 C.J.S Insurance § 1637 (A liability insurer has a duty to defend when the claims potentially come within the liability policy.)

Plaintiff does not dispute that the injuries to McGrath were not covered under State National's policy with 2-W diving. However, Plaintiff does dispute the assertion that the injuries suffered by Jason Pope and Brian Bradford should not be covered under the policy.

Plaintiff argues that there are two legal definitions of occurrence which courts have applied in interpreting insurance contracts. The first one evaluates the cause of the occurrence; the second definition focuses on the effect. In Owners Ins. Co. v. Salmonsen, 366 S.C. 336, 622 (2005), the Supreme Court of South Carolina refused to adopt either view -citing both with approval. Plaintiff argues that using either definition supports its view that the facts of this case represent at least two separate occurrences.

According to Plaintiff, the occurrences of negligence which amount to separately covered claims are: the order from the boat to ascend too rapidly which resulted in Brian Bradford's decompression sickness; the order to Jason Pope to enter the decompression chamber "dirty"; Jason Pope's improper

9

decompression; and both divers' carbon monoxide poisoning from the faulty placement of the air intake valve.

In opposition to State National's arguments regarding the duty to defend, 2-W raises several arguments.[6] First, 2-W argues that State National assumed liability for the lawsuit by initially providing its defense. 2-W alleges that because State National did not reserve any rights before assuming the defense, it is estopped from denying coverage. Northwester Nat. Ins. Co. v. R.S. Armstrong & Bors. Co., 627 F. Supp. 951 (D. S.C. 1985).

2-W further argues that any ambiguities in the insurance contract should be construed against the drafter. Williams v. Teran, Inc., 266 S.C. 55,60 (1976). 2-W cites authority for the proposition that clauses in the contract should be liberally construed in favor of the insured. Buddin v. Nationwide, 250 S.C. 332, 157 (1967). Since State National is the drafter of the insurance policy and 2-W is the insured, 2-W argues that the Court should employ a strong presumption in its favor when it interprets the insurance policy.

Specifically, 2-W contends that the provisions in the policy regarding the scope of State National's duty to defend create an ambiguity which must be construed in 2-W's favor. State National alleges that the insurance provision specifically

---

[6] 2-W Diving objects to the inclusion by Defendant of an affidavit from Shirley Bickford with respect to the fact that the policy has run out. This, it argues, is improper evidence.

10

says that it is not subject to the same warranties, terms, and conditions as the primary insurance with respect to legal and investigative costs. However, 2-W points out, there is nothing in the policy which specifies how the policy differs with respect to duty to defend. Therefore, 2-W argues that the duty to defend should be interpreted broadly and in favor of coverage.

2-W goes on to point out other parts of policy which share a similar ambiguity and should be construed in its favor.

2-W also contends that State National cannot prove that the policy limits have been exhausted until there is a determination regarding the number of occurrences. Therefore, according to 2-W, State National has a duty to continue to defend until there is a judicial determination that the Bradford claim cannot possibly fall within the coverage of its policy.

Finally, 2-W argues that the characterization of State National as the "excess insurer" is misleading since State National is in fact the *only* insurer. The so-called primary insurance is actually a $25,000.00 deductible for which 2-W is responsible.

**ANALYSIS:**

In the "absence of clearly controlling federal precedent" the law of the "state with the most significant relationship to the substantive issue" applies. Wilbur Boat Co. v. Fireman's

Fund Ins. Co., 348 U.S. 310, 314 (1955). The Court agrees with all parties that South Carolina law should guide the substantive issues in this matter such as the duty to defend and the definition of "occurrence" for the purposes of an insurance contract.

The Court finds that State National owes 2-W a defense for the following reasons. First, the Plaintiff's complaint makes sufficient allegations to trigger the duty to defend based on multiple occurrences under the law in South Carolina. Second, the scope of State National's duty to defend is ambiguous in its contract with 2-W and thus should be construed in favor of coverage for the insured. Finally, State National assumed the defense and handling of the claims against 2-W Diving without providing a reservation of rights and thus cannot withdraw its defense now without causing prejudice.

In order to determine whether or not there is a duty to defend, the Plaintiff and insured need only show that the alleged claims *could* fall within the boundaries of the policy issued by State National. South Carolina Medical Malpractice Liability Ins., etc. v. Ferry, 291 S.C. 460, 463 (S.C. 1987).

"It is settled that the duty of a liability insurer to defend is broader than its duty to indemnify."Liberty Life Ins. Co. v. Commercial Union Ins. Co., 857 F.2d 945, 950 (4th Cir. S.C. 1988) (citing Sloan Construction Co., Inc. v. Central

12

National Ins. Company of Omaha, 269 S.C. 183, 236 S.E.2d 818 (1977)).See also Green Textile Assocs. v. Fed. Ins. Co., 2006 U.S. Dist. LEXIS 40821*14 (D.S.C. June 16, 2006) (same).

South Carolina law defines the duty to defend based on the "allegations of the complaint" and whether or not the facts alleged possibly fall within the coverage of the insurance policy. South Carolina Medical Malpractice Liability Ins., etc. v. Ferry, 291 S.C. 460, 463 (S.C. 1987); Hartford Accident and Indemnity Co. v. South Carolina Ins. Co., 252 S.C. 428, 166 S.E. 2d 762 (1969). The insurer can avoid the duty to defend only "where the damage is caused by a reason unambiguously excluded under the policy." Fed. Ins. Co. v. Evian Horizontal Prop. Regime, 126 Fed. Appx. 589, 591 (4th Cir. S.C. 2005) citing Federated Mut. Ins. Co. v. Piedmont Petroleum Corp., 314 S.C. 393 (S.C. Ct. App. 1994).

However, if there is doubt as to whether or not an insurance company has a duty to defend, the question should be resolved in favor of the insured. Century Sur. Co. v. Hardscape Constr. Specialties, Inc., 578 F.3d 262, 267 (5th Cir. 2009)

There are sufficient allegations in Plaintiff's complaint against 2-W Diving to support a finding that the various claims represent separate occurrences under the law.[7] As such, the

---

[7] State National provided defense for the claims of McGrath and Pope. The claims by Jason Pope were settled on June 16, 2009.

allegations could fall within the scope of coverage from the insurance contract.

The Supreme Court of South Carolina has refused to endorse either the majority or minority rule with respect to defining an occurrence. <u>Owners Ins. Co. v. Salmonsen</u>, 366 S.C. 336, 339 (S.C. 2005) Instead, the court simply defined the two conflicting interpretations of occurrences and declined to support one position over the other. <u>Id.</u>

The first definition of occurrence is based on the "cause test" which identifies the separate causes of accidents as the source of separate occurrences. <u>Id.</u> at 338. Under this theory, Plaintiff prevails with sufficient allegations to require State National's defense of the claims as several separate occurrences. The first occurrence was allegedly caused by the order to Bradford requiring him to rise too quickly from the water. The second cause was the allegedly faulty administration of the decompression machine. Finally, the third cause was the

---

State National was a party to the consent motion to dismiss Jason Pope's claim. (Rec. D. 322) State National, in its brief, alleges that there is no evidence that it was liable to Jason Pope and therefore this claim cannot constitute an occurrence. Defendant's Response Page 13. However, this logic is circular. Though State National alleges that payments it made to Pope exhausted its coverage, State National also alleges that there is no evidence it was liable to Pope and therefore Pope's claims which were settled cannot constitute an occurrence. The Court finds this argument unconvincing.

placement of the exhaust pipe too close to the hyperbaric chambers used by the divers.

The second definition of occurrence is based on the "effect test" which looks at each injury as a separate occurrence. Id. Under this test, Plaintiff also prevails in defining the various claims of this case as separate occurrences. Plaintiff alleges a variety of different injuries including decompression sickness and carbon monoxide poisoning. Therefore, under either of these definitions of occurrence, Plaintiff's claim that the accidents represented separate occurrences is plausible.

Accordingly, State National has the duty to defend 2-W Diving against the claims by Brian Bradford since there are sufficient allegations of multiple occurrences. Therefore, Brian Bradford's claims are not "unambiguously excluded" from coverage and should be defended. Fed. Ins. at 396; c.f Collins Holding Corp. v. Wausau Underwriters Ins. Co., 379 S.C. 573, 578 (S.C. 2008) (evaluating the duty to defend based on "the possibility of an 'occurrence' as defined in the policy.")[8]

---

[8] The Court rejects State National's argument that since the number of occurrences have not been litigated, it cannot be made to defend Bradford claims. The duty to defend is much more expansive than this interpretation implies and is triggered when, as noted above, claims are not "unambiguously excluded" from coverage. Fed. Ins. at 396.

The Court is unconvinced by State National's argument that where it provides evidence that the limit of the policy has been reached, it does not owe a duty to defend. The Court finds that State National fails to show unambiguously that the limits of its policy have been exhausted and thus cannot escape the duty to defend.

The terms of State National's insurance policy are ambiguous with respect to the insurance company's obligation to provide defense from suit and therefore State National owes a duty to defend. "Terms in an insurance policy should be liberally construed in favor of the insured." Town of Duncan v. State Budget & Control Bd., 326 S.C. 6, 13 (S.C. 1997) citing Standard Fire Ins. Co. v. Marine Contracting and Towing Co., 301 S.C. 418, 392 S.E.2d 460 (1990); City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund, 382 S.C. 535, 549 (S.C. 2009). State National's contract with 2-W describes its coverage as an Excess indemnity insurance policy.[9] The policy's language states that it mirrors the primary indemnity insurance except "with respect to the obligation to investigate and defend." Pl. Br. Ex. 1. However the excess policy does not specify in what ways it

---

[9] The Court notes that the characterization of State National's coverage of 2-W Diving as excess coverage is somewhat misleading. The primary coverage is essentially 2-W's $25,000.00 deductible. In the simplest terms, State National is the primary insurer to 2-W and the only insurance company to assume defense on its behalf.

16

differs with respect to investigation and defense. A logical reading of the language of the policy would assume that the duty to defend may differ but not that it was altogether eliminated, especially since the duty to defend is such a standard provision in insurance contracts.[10]

Where there is ambiguity in an insurance contract "the courts favor an interpretation in favor of coverage." Buddin v. Nationwide Mut. Ins. Co., 250 S.C. 332, 338 (S.C. 1967) (noting that where the ambiguous clause "is one of inclusion it should be broadly construed for the benefit of the insured while in exclusion cases the same clause is given a more restricted interpretation.") See also McPherson v. Mich. Mut. Ins. Co., 310 S.C. 316, 320 (S.C. 1993). Furthermore, ambiguities in the contract should be construed against the drafter. Williams v. Teran, Inc., 266 S.C. 55, 60 (1976). And, in the absence of an expressed provision in a contract, the Court has the authority to "create a default rule of contract interpretation." Ellett Bros. v. United States Fid. & Guar. Co., 275 F.3d 384, 387 (4th Cir. S.C. 2001).

Finally, 2-W argues, convincingly, that State National is estopped from denying coverage mid-defense without evidence that

---

[10] In this respect, State National's own actions are instructive to the Court. State National has provided defense for all the claims against 2-W without reserving any rights. It appears that State National itself believed it owed 2-W a complete defense.

17

it reserved a right to do so when it assumed responsibility for 2-W's defense of the claims against it by Brian Bradford. Northwestern Nat. Ins. Co. v. R.S. Armstrong & Bors. Co., 627 F. Supp. 951 (D. S.C. 1985); 38 A.L.R.2d 1148 § 2. Prior to its withdrawal from representation on April 15, 2009, State National took responsibility for the defense of 2-W throughout the litigation of the claims consolidated into this matter. State National gave no indication to 2-W that it intended to withdraw from defending the claims.

Accordingly,

**IT IS ORDERED** that the **Motion for Partial Summary Judgment** by Brian Bradford Diving, Inc. (Rec. D. 337) and the **Motion for Partial Summary Judgment** by 2-W Diving, Inc. (Rec. D.345) are **GRANTED** with respect to the duty to defend.

New Orleans, Louisiana, this 14th day of January, 2010.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE